**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald N. Pancho, Sr., | ) CIV 12-473-PHX-MHB |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Donald N. Pancho, Sr.'s appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On August 20, 2008, Plaintiff filed applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, alleging disability beginning February 1, 2008. (Transcript of Administrative Record ("Tr.") at 117-128, 19.) His application was denied initially and on reconsideration. (Tr. at 62-65, 19.) On April 29, 2009, he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 85-86, 19.) A hearing was held on June 10, 2010. (Tr. at 34-61, 19.) On July 21, 2010, the ALJ issued a decision in which she found that Plaintiff was not disabled. (Tr. at 16-33.) Thereafter, Plaintiff requested review of the ALJ's decision. (Tr. at 14-15.)

The Appeals Council denied Plaintiff's request, (Tr. at 1-6), thereby rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1)  determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 1, 2008 – the alleged onset date. (Tr. at 21.) At step two, she found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, morbid obesity, degenerative disc disease of the lumbar spine, and sleep apnea. (Tr. at 21-24.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 24.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work ... except for occasional postural functions, but no climbing of ladders, ropes or scaffolds or unprotected heights; avoid concentrated exposure to extreme cold or hazards; no more than occasional pushing/pulling activity with the lower extremities; requires a sit/stand option; and has mental capacity for simple work."[1] (Tr. at 24-27.) The ALJ determined that Plaintiff was unable to perform any past relevant work, but based on his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 27-28.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1  Therefore, the ALJ concluded that Plaintiff has not been under a disability from February 1,
2  2008, through the date of her decision. (Tr. at 29.)

### IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider his subjective complaints; and (2) failing to properly weigh medical source opinion evidence. Plaintiff requests that the Court remand for determination of benefits.

**A.     Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred by rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ failed to properly support her decision to discredit Plaintiff's allegations with specific, clear and convincing reasons. When attempting to refute Plaintiff's testimony with the objective medical evidence, the ALJ clearly relies on Plaintiff's apparent noncompliance with his diabetic medication (Tr. at 22, 26-27), yet she spends the entirety of her discussion addressing isolated, non-related portions of the record showing Plaintiff's normal movement, normal strength, and normal heart functioning. (Tr. at 25-26.) For example, the ALJ states that Plaintiff had "complete normal movement on the neck, shoulders, elbows, wrists, fingers, hips, and ankles. He walked without an ambulatory support device. He had normal posture and sat without alternating positions ... [and] had 5/5 strength throughout (Exhibit 1F)." (Tr. at 25.) The ALJ addressed a medical report stating that Plaintiff's motor strength was "5/5 all over. Lumbar spine range of motion was intact except for lumber extension and rotation, which produced a slight painful arc of motion (Exhibit 14F/14-15)." (Tr. at 25.) The ALJ goes on to discuss Plaintiff's "normal heart functioning" and the lack of "obvious signs of a stroke." (Tr. at 26.)

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

When finally addressing Plaintiff's diabetic condition, the ALJ summarily concludes that Plaintiff was not compliant with treatment, either in terms of monitoring his blood sugars or taking his diabetic medication as prescribed. The ALJ stated, in pertinent part:

> In progress notes dated July 2009, Adelaide P. Bahr, M.D., stated that the claimant reported that he was not taking insulin because sugars were low (Exhibit 14F/23). ...
>
> In progress notes dated April 28, 2010, Brenden McRae, M.D., stated that the claimant was seeking medication. He had been out of diabetes medication for 2 months and had not been checking his blood sugar. He was counseled on importance of taking medication (Exhibit 19F/10).

(Tr. at 25-26.)  The ALJ then cited to Sections 404.1530 and 416.930 of the Code of Federal Regulations, stating, "in order to get benefits, claimant must follow treatment prescribed by his physician if that treatment can restore his ability to work. When claimant does not follow prescribed treatment without a good reason, he will not be found disabled.  In this case, the claimant has been noncompliant with his diabetic medication on a regular basis." (Tr. at 26.)

Plaintiff objects to the ALJ's reliance on his alleged noncompliance with medical treatment as reason for her decision to discount the intensity and duration of his pain complaints.  Social Security Ruling 96-7p outlines the criteria for evaluating a claimant's credibility and provides that claims of pain may be deemed less credible where the "frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."  The Ruling further provides that:

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Here, the ALJ failed to seek an explanation from Plaintiff as to why he had allegedly been noncompliant with his diabetic medication, and the evidence of record on this issue is, at best, conflicting.  Indeed, the record documents financial constraints, a lack of understanding regarding treatment, and, contrary to the conclusion of the ALJ, compliance with the prescribed medication regimen on various occasions. (Tr. at 571, 363, 318, 543,

- 6 -

1    564-66, 355, 535.) Thus, the Court finds that the ALJ's failure to explore these explanations
2    was in violation of SSR 96-7p.
3         Likewise unavailing is the ALJ's reliance on Plaintiff's activities of daily living used
4    to discredit his testimony. The ALJ's analysis consists of the following three sentences:

> The claimant's activities of daily living are inconsistent with his claim of disabling limitations. The claimant testified that his daily activities include getting the children up, folding clothes, watching the children and watching movies. The claimant testified that he could lift a bag of groceries and lift/carry 20 pounds.

8    (Tr. at 26.) The Court finds that the ALJ fails to draw a connection between Plaintiff's
9    reported sporadic activities of daily living, which included napping for four hours during the
10   day (Tr. at 51), and the ability to sustain work considering his diabetes mellitus with
11   neuropathy, morbid obesity, degenerative disc disease of the lumbar spine, and sleep apnea.
12   Indeed, this Circuit has made clear that the mere fact that a claimant engages in normal daily
13   activities "does not in any way detract from her credibility as to her overall disability. One
14   does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260
15   F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair, 885 F.2d at 603).

### B.    Medical Source Opinion Evidence

17        Plaintiff contends that the ALJ erred by failing to properly weigh medical source
18   opinion evidence. Specifically, Plaintiff argues that the ALJ failed to provide legally
19   sufficient reasons to reject Dr. Bahr's medical opinion, which concluded that Plaintiff could
20   not meet the demands of any sustained work activity.
21        "The ALJ is responsible for resolving conflicts in the medical record." Carmickle v.
22   Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise
23   between a treating physician's medical opinion and other evidence in the claimant's record.
24   The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial
25   weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting
26   Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is
27   given controlling weight when it is "well-supported by medically accepted clinical and
28   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

1 in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating
2 physician's opinion "is not well-supported" or "is inconsistent with other substantial
3 evidence in the record," then it should not be given controlling weight. Orn, 495 F.3d at 631.

4 If a treating physician's opinion is not contradicted by the opinion of another
5 physician, then the ALJ may discount the treating physician's opinion only for "clear and
6 convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If
7 a treating physician's opinion is contradicted by another physician's opinion, then the ALJ
8 may reject the treating physician's opinion if there are "specific and legitimate reasons that
9 are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

10 Since the opinion of treating physician, Dr. Bahr, was contradicted by examining
11 physician, Dr. Richard Palmer, reviewing state agency physician, Dr. John Fahlberg, and
12 other objective medical evidence, the specific and legitimate standard applies.

13 Historically, the courts have recognized the following as specific, legitimate reasons
14 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
15 the absence of regular medical treatment during the alleged period of disability; the lack of
16 medical support for doctors' reports based substantially on a claimant's subjective complaints
17 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
18 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
19 v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885
20 F.2d at 604. Here, the Court finds that the ALJ properly gave specific and legitimate reasons,
21 based on substantial evidence in the record, for discounting Dr. Bahr's opinion.

22 According to the record, Dr. Bahr treated Plaintiff for the following conditions:
23 uncontrolled diabetes with neuropathy; back and knee pain; morbid obesity; and sleep apnea.
24 (Tr. at 387-88, 314-15, 363-64, 331-32, 484-85, 480-81, 472-73, 462-63.) Dr. Bahr found
25 that Plaintiff's obesity warranted surgical intervention – specifically, gastric bypass surgery.
26 (Tr. at 364.)

27 On April 14, 2009, Dr. Bahr completed a Medical Assessment of Ability to do Work-
28 Related Physical Activities and opined that, in an eight-hour day, Plaintiff can sit, stand, and

walk less than two hours each, and can lift less than 20 pounds occasionally and less than 15 pounds frequently. (Tr. at 442-43.) When asked if the limitations noted in her April 4, 2009 report could reasonably be expected to result from objective clinical or diagnostic findings which have been documented in Plaintiff's medical records, Dr. Bahr stated "Yes" and attributed Plaintiff's limitations to degenerative changes in the spine and obstructive sleep apnea. (Tr. at 443.)

Then, on May 4, 2010, Dr. Bahr completed another Medical Assessment of Ability to do Work-Related Physical Activities. (Tr. at 497-98.) Dr. Bahr opined that Plaintiff cannot perform work eight hours a day, five days a week on a regular and consistent basis due to "severe back pain." (Tr. at 497.) Dr. Bahr noted that Plaintiff is limited to sitting, standing, and walking less than two hours each in an eight-hour workday; and limited to lifting less than 20 pounds. (Tr. at 497-98.) When asked if the limitations noted in her May 4, 2010 report could reasonably be expected to result from objective clinical or diagnostic findings which have been documented in Plaintiff's medical records, Dr. Bahr stated "Yes" and, again, attributed Plaintiff's limitations to degenerative changes in the spine and obstructive sleep apnea. (Tr. at 498.)[3]

On November 3, 2008, Plaintiff was examined by Dr. Palmer at the request of the Administration. (Tr. at 269-75.) Plaintiff reported to Dr. Palmer that he suffers insulin-dependent diabetes, peripheral neuropathy, constant pain and throbbing in both shins, and some intermittent pains in his knees. (Tr. at 269-75.) Dr. Palmer noted that there was some slowness due to obesity, and that Plaintiff uses his hands for support when changing positions. (Tr. at 269-75.) Dr. Palmer further noted tandem walking is unsteady; mild crepitations in both knees; neurological examination reveals loss of sensation from the feet to the knees; and absent reflexes throughout both lower extremities. (Tr. at 269-75.) He

---

[3] Of particular note, although Dr. Bahr treated Plaintiff for multiple impairments over several years, which included obesity, in completing both assessments of ability to do work-related physical activities, despite given the opportunity to list each impairment he treated as reason for or contributing to Plaintiff's limitations, he mentions solely "back pain" or degenerative changes in the spine and obstructive sleep apnea.

1 ultimately diagnosed insulin-dependent diabetes mellitus, peripheral neuropathy, constant
2 dysesthesias affecting the shins, and extreme obesity. (Tr. 269-75.) He opined, however,
3 that Plaintiff has functional abilities consistent with light work. (Tr. 269-75.) Specifically,
4 Dr. Palmer found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently;
5 could stand and/or walk six hours in an eight-hour workday; and had no limitations sitting
6 in an eight-hour workday. (Tr. at 269-75.)

On December 4, 2008, state agency physician, Dr. Fahlberg, reviewed the medical record and completed a Physical Residual Functional Capacity Assessment indicating that Plaintiff has functional abilities consistent with light work. (Tr. at 276-83.) Specifically, Dr. Fahlberg opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. (Tr. at 276-83.) With regard to postural limitations, Dr. Fahlberg found that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (Tr. at 276-83.) Dr. Fahlberg further found no manipulative, visual, or communicative limitations. (Tr. at 276-83.)

After considering the medical evidence, the ALJ first addressed Dr. Bahr's medical assessments finding that Plaintiff has limitations that restrict him to less than sedentary work. (Tr. at 26.) The ALJ stated:

> [Dr. Bahr's] opinion is given limited weight because this level of severity is inconsistent with the overall medical evidence. These opinion[s] appear[] to be based primarily on his back impairment, but there is little objective [evidence] to support a disabling back impairment. The undersigned believes that the claimant's biggest problem is his obesity and the fact that he has been noncompliant with his diabetes [medication] on a regular basis.

(Tr. at 26.) The ALJ then discussed Dr. Palmer's November 3, 2008 Medical Source Statement noted above and concluded, "[t]his opinion is given great weight to the extent that it is consistent with claimant's ability to perform light work." (Tr. at 27.) Lastly, the ALJ addressed Dr. Fahlberg's assessment. The ALJ stated, in pertinent part:

> On December 4, 2008, John Fahlberg, M.D., a State Agency medical consultant, reviewed the evidence of record and completed a Physical Residual Functional Capacity Assessment, which indicated that the claimant could lift and carry 20 pounds frequently and 10 pounds occasionally; could stand

- 10 -

and/or walk about 6 hours in an 8 hour workday; could sit about 6 hours in an 8 hour workday; pushing and/or pulling limited to occasional in lower extremities; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and avoid concentrated exposure to extreme cold, vibration and hazards (machinery, heights, [etc.]) (Exhibit 2F). This opinion is given great weight, because the evidence demonstrates that the claimant's physical impairments produce limitations consistent with light work. The undersigned believes that his biggest problem is obesity and noncompliance with diabetes medication.

(Tr. at 27.)

Regarding Plaintiff's "severe back pain" and degenerative changes in the spine assessed by Dr. Bahr as the primary reason for Plaintiff's limitations, the Court notes that earlier in her discussion the ALJ found as follows:

The claimant has degenerative disc disease of the lumbar spine. The claimant underwent lumbar facet injections in lumbar spine on March 14, 2009, for lumbar spondylosis (Exhibit 10F/6). In medical report dated November 3, 2009, Sallu Jabati, M.D., stated that the claimant complained of back pain. MRI of the lumbar spine done in November 2008 was unremarkable. X-rays of the lumbar spine done prior to that showed Schmerls node involving L1-L2 and degenerative changes at T11-T12. Examination was positive for back pain. Palpation of the lumbar spine revealed tenderness in the bilateral lumbar facet and sacroiliac joint areas and lumbar spine range of motion was intact except for lumbar extension and rotation, which produced a slight painful arc of motion. The claimant was diagnosed as having sacroiliac dysfunction bilaterally and lumbar spondylosis/[lumbar] facet athropathy (Exhibit 14F/14-15). (The findings in regard to his back impairment are not consistent with a disabling impairment).

(Tr. at 22.)

The ALJ is tasked with determining credibility and resolving conflicts in medical testimony, not this Court. See Andrews, 53 F.3d at 1039. "The ALJ need not accept an opinion of a physician ... if it is conclusionary and brief and is unsupported by clinical findings." Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). When "the evidence is susceptible to more than one rational interpretation," this Court "must uphold the ALJ's decision." Andrews, 53 F.3d at 1039-40.

In light of the objective medical evidence, the Court finds that ALJ provided specific and legitimate reasons, based on substantial evidence in the record, for discounting the opinion of Dr. Bahr.

## V. CONCLUSION

In summary, the Court finds that although the ALJ properly rejected Dr. Bahr's opinion providing "specific and legitimate reasons that are supported by substantial evidence in the record," the ALJ failed to properly support her decision to discredit Plaintiff's subjective complaints with specific, clear and convincing reasons. Accordingly, the Court finds error and will vacate the ALJ's decision.

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case for further development of the record or for an award benefits. See 42 U.S.C. § 405(g); Harman v. Apfel, 211 F.3d 1172, 1173-74 (9th Cir. 2000). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)); see Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Here, the ALJ failed to provide sufficient explanation for finding Plaintiff not fully credible. As the Court has indicated, the ALJ failed to seek an explanation from Plaintiff pursuant to SSR 96-7p regarding why he had allegedly been noncompliant with his diabetic medication, and failed to draw a connection between Plaintiff's reported sporadic activities of daily living and the ability to sustain work considering his severe limitations. Thus, the Commissioner needs to reconsider these issues and modify the decision as necessary.

Therefore,

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

1    **IT IS ORDERED** that the final decision of the Commissioner is **VACATED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order. The Clerk of the Court shall enter judgment accordingly.

DATED this 19th day of June, 2013.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge